

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARY LAMBERT** | **CIVIL ACTION** |
| **VERSUS** | **NO: 04-2481-KDE-SS** |
| **LOUISIANA HOUSING DEVELOPMENT CORPORATION** | |

### ORDER

LHDC'S MOTION FOR SUMMARY JUDGMENT (Rec. doc. 22)

**GRANTED IN PART AND DENIED IN PART**

The parties consented to the trial of this matter before a magistrate judge. Rec. doc. 10. On August 31, 2005, the plaintiff, Mary Lambert ("Lambert"), filed a complaint against the defendants, Louisiana Housing Development Corporation ("LHDC") and Creative Staffing, Inc. ("Creative Staffing"). Rec. doc. 1. Lambert's claims against Creative Staffing were compromised and it was dismissed as a defendant. Rec. doc. 29. LHDC filed a motion for summary judgment. Rec. doc. 22.

Lambert alleges that she is a female and an Asian-American and was discriminated against on both grounds. Rec. doc. 1. In March 2003, she began working for LHDC as a data entry clerk.



Her supervisor was Debbie Thompson ("Thompson"). Lambert alleges that beginning in May 2003 and continuing until November 3, 2003, she was subjected on numerous occasions to sexual harassment by Thompson. On Friday, October 31, 2003, Lambert alleges an incident occurred concerning whether the employees would be allowed to leave early at 4:00 p.m. rather than at 4:30 p.m. Lambert contends that Thompson forced her to remain, while the other employees were allowed to leave early. Lambert alleges that she became upset and demanded that Thompson not speak to her unless it was business. She alleges that she told Thompson that she was tired of being treated unfairly and sexually harassed. Lambert alleges that on November 3, 2003 she was fired by Thompson. She alleges that she complained to Bobbie Robinson, Thompson's supervisor, who reported that LHDC would stand behind Thompson.

Lambert alleges that LHDC violated Title VII, 42 U.S.C. § 2000(e)-2(a), by subjecting her to unwelcome and offensive conduct and by engaging in unwelcome sexually oriented and racially charged conduct that altered her perception of her employment and which created an intimidating, hostile and offensive atmosphere. She also alleges that LHDC violated Louisiana law. See La. Rev. Stat. Ann. § 23:1006 and § 51:2231. She contends that LJHDC unlawfully retaliated against her by firing her for complaining about Thompson's unlawful activity. Rec. doc. 1.

LHDC seeks summary judgment on both the sexual harassment and discrimination claims. Assuming that Lambert is pursuing a quid pro quo claim, LHDC contends that she cannot prove either that she was subjected to unwelcome sexual advances or that there was a tangible employment action that resulted from her refusal to fulfill Thompson's alleged sexual requests. Assuming Lambert is making a hostile work environment claim, LHDC contends that the alleged acts were not

so severe or pervasive as to alter the conditions of Lambert's employment. LHDC also contends that there is insufficient evidence to establish claims of racial discrimination, unlawful retaliation and intentional infliction of emotional distress. Lambert responds that LHDC improperly characterizes the evidence. She argues that the evidence is sufficient to raise genuine issues that preclude summary judgment. Although Lambert responds to LHDC's request for dismissal of the sexual harassment, racial discrimination and retaliation claims, she does not respond to LHDC's contention that any claim for intentional infliction of emotional distress should be dismissed. LHDC's motion for summary judgment shall be treated as unopposed and granted as to any claim for intentional infliction of emotional distress.

## STANDARD FOR SUMMARY JUDGMENT

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Wyatt v. Hunt Plywood, 297 F.3d 405, 409 (5th Cir. 2002). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmoving's case. Celotex, 106 S.Ct. at 2553; see Lujan, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 110 S. Ct. at 3180, by "unsubstantiated assertions," Hopper v. Frank, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994). The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See Lujan, 110 S. Ct. at 3188. Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. See Evans v. City of Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000).

In Fierros v. Texas Dept. of Health, 274 F.3d 187 (5th Cir. 2001), the Fifth Circuit cautioned

that summary judgment is not favored in claims of employment discrimination and that the Supreme Court in <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000), emphasized the paramount role that juries play in Title VII cases, stressing that in evaluating summary judgment evidence, courts must refrain from the making of credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, which are jury functions, not those of a judge. <u>Fierros</u>, 274 F.2d at 190-91.

SUPERVISOR SEXUAL HARASSMENT - QUID PRO QUO

In <u>Casiano v. AT&T Corporation</u>, 213 F.3d 278 (5th Cir. 2000), the Fifth Circuit described the road map to be followed in resolving supervisor sexual harassment cases under Title VII and <u>Ellerth/Faragher</u>.[1] "At the first stop . . ., courts are required to determine whether the complaining employee has or has not suffered a tangible employment action." <u>Id</u>. at 283 (quotation marks omitted). LHDC contends that, because Lambert did not think she was terminated on Halloween and returned to work on Monday, it is questionable whether there was a tangible employment action to substantiate a <u>quid pro quo</u> claim under a subjective analysis.

There are issues of fact as to the events that led up to the afternoon of October 31, 2004 and what occurred on that afternoon. Lambert testified that Ann Martin asked Thompson if she would let staff off early since it was Halloween. Thompson replied that she might. After an exchange, Lambert contends that Thompson said that everyone except Lambert could leave early. Rec. doc. 28, exhibit C at pp. 114-16. Rosland Brown testified in accord with that version. <u>Id</u>., exhibit D at

---

[1] <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 118 S.Ct. 2257 (1998), and <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 118 S.Ct. 2275 (1998).

pp. 18-19. Ann Martin, however, testified that she did not leave early and that she, Thompson and another employee were just joking about leaving early. Id., exhibit J at pp. 21. Lambert and Thompson present conflicting versions of what occurred on Halloween as does the testimony of the other witnesses. On Monday, Lambert was told that she was fired for insubordination on Friday evening. Id., exhibit C at pp. 32-33.

If Lambert suffered a tangible employment action (there is a material issue as whether she did), then her suit may be classified as quid pro quo claim.

> In a "quid pro quo" case, the road branches toward a second stop at which the court must determine whether the tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's alleged sexual harassment.

213 F.3d at 283. LHDC contends that there is no evidence that Thompson asked Lambert out on a date, sought sexual activity with her, or touched her in a sexually offensive manner. Lambert argues that there is sufficient evidence to raise a genuine issue as to whether the termination was the result of Lambert's rejection of Thompson.

There is evidence that Lambert possessed physical characteristics that were attractive to Thompson. Rec. doc. 28, exhibit E, p. 15 and exhibit F, p. 16. Thompson denied sharing such information at the workplace. Id, exhibit I, pp. 134-35. Lambert contends that she maintained a log of the sexual harassment. Id., exhibit A. She testified as to these events in her deposition. Id., exhibit C. Lambert reported the incidents to some of her co-workers. Id., exhibit D at pp. 13-15 and exhibit E at pp. 11, exhibit F at p. 11. Some of the incidents described by Lambert were observed by her co-workers. Id., exhibit F at pp. 11-13. Thompson was observed engaging in behavior

suggestive of a sexual relationship with another employee. Id., exhibit D at p. 12 and exhibit E at p. 12-13. There is sufficient evidence to raise a genuine issue as to whether the termination was the result of Lambert's rejection of Thompson. Assuming the jury finds that Lambert suffered a tangible employment action which resulted from her rejection of Thompson's alleged sexual harassment, then LHDC is vicariously liable per se. Casiano, 213 F.3d at 283-84.

### SUPERVISOR SEXUAL HARASSMENT - HOSTILE ENVIORNMENT

If Lambert did not suffer a tangible employment action, the suit is a hostile environment case. Casiano at 284. Lambert must prove that the actions ascribed to Thompson constituted severe or pervasive sexual harassment. Id. If proved, LHDC is vicariously liable.[2] LHDC argues that Lambert has only pointed to isolated instances of physical contact. It contends that crude, vulgar and inappropriate behavior is insufficient. It urges that Lambert has no evidence of Thompson's sexual desire for her. LHDC contends even if this hurdle is overcome, Lambert cannot establish that the harassment altered a term or condition of employment or created an abusive work environment.

Lambert responds by contending that the harassment lasted for more than five months, and included numerous instances of unwelcome sexual conduct directed at plaintiff. Thompson's comments to Lambert, if believed by the jury, about sex with women in general, in combination with the evidence that Lambert was Thompson's type could be interpreted as evidence of sexual desire on the part of Thompson for Lambert. The drawing of legitimate inferences from the facts is the

---

[2] LHDC does not assert the affirmative defense available under a hostile environment case. It does not contend that it exercised reasonable care to prevent and correct promptly severe or pervasive sexual harassment and that Lambert unreasonably failed to take advantage of any preventive or corrective opportunities provided by LHDC. Casiano, 213 F.3d at 284.

function of the jury and not of the court. Fierros, 274 F.2d at 190-91. Lambert argues that the environment was subjectively unreasonable to her and, more importantly, she contends that the testimony of co-workers demonstrates that it was objectively offensive. There is conflicting testimony on this issue. Some of the employees support, in whole or in part, Lambert's description of the environment. See for example, Rec. doc. 28, exhibit F at pp. 29-30. There is a genuine issue of material fact as to whether the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment.

## UNLAWFUL RETALIATION

There are three elements to a prima facie case of retaliation under Title VII: (1) the plaintiff engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. Raggs v. Mississippi Power & Light Company, 278 F.3d 463, 471 (4th Cir. 2002). LHDC assumes for purposes of this motion that Lambert proved a prima facie case of retaliation. Rec. doc. 22, memorandum at p. 17. It argues that under the McDonnell Douglas standard the burden is shifted to it to produce evidence that Lambert was terminated for a non-discriminatory reason.[3] It contends that Lambert was fired for insubordination. LHDC describes a series of alleged incidents that culminated in the argument on Friday, October 31, 2003 over whether Lambert could leave early. On the following Monday, Lambert was told she was fired for the October 31st insubordination. LHDC contends that Lambert must provide substantial evidence that this reason was pretextual. The court has already determined

---

[3] McDonnell Douglas Corp. V. Green, 4111 U.S. 792, 93 S.Ct. 1817 (1973).

that there is a material issue of fact as to what transpired on October 31, 2003. This is sufficient to raise an issue of fact as to whether LHDC's stated reason for terminating Lambert was a pretext.

## RACIAL DISCRIMINATION

Lambert alleges a racially hostile environment claim. The parties agree that the elements of such a claim are: (1) racially discriminatory intimidation, ridicule, and insults; (2) that are sufficiently severe or pervasive; (3) so as to alter the conditions of employment; and (4) create a hostile environment. See Celestine v. Petroleos De Venezuela, 266 F.3d 343, 353-54 (5th Cir. 2001). LHDC argues that Lambert does not present a prima facie case that the work environment was hostile and abusive in terms of racial discrimination. Discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII. See DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995), cert. denied, 516 U.S. 974, 116 S.Ct. 473 (1995). To prove a hostile environment claim, Lambert must demonstrate that the discriminatory conduct was severe or pervasive enough to create an objectively hostile or abusive work environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 114 S.Ct. 367, 370 (1993).

Lambert is an Asian-American whose mother was Japanese. Thompson referred to Lambert as a "spic," "Mexican" and "chink." Carmen Rowe heard Thompson call Lambert "little chink," "spick," "Mexican," "cry baby" and "little girl." Thompson continued to call Lambert by these names after Lambert told her that she was oriental. Rec. doc. 28, exhibit F at pp. 14-15. Rosland Brown never heard Lambert called "spic", but it was going around the office that Lambert was given the nickname "spic." Id., exhibit D at p. 23. Lambert testified that Thompson, in the presence of

9

others, including Thompson's mother, referred to her as a "spic." Id., exhibit C at pp. 86-87. Accepting Lambert's allegations as true and crediting her with all favorable inferences, Thompson's racial statements were not so severe or pervasive to create an objectively hostile or abusive work environment. "[M]ere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the terms and conditions of employment to implicate Title VII." Harris, 114 S.Ct. at 370.

## CONCLUSION

LHDC's motion for summary judgment shall be denied as to Lambert's claims: (1) that LHDC violated Title VII, 42 U.S.C. § 2000(e)-2(a), and Louisiana law by subjecting her to unwelcome and offensive conduct and by engaging in unwelcome sexually oriented conduct that altered her perception of her employment which created an intimidating, hostile and offensive atmosphere; and (2) that LHDC unlawfully retaliated against her by firing her for complaining about Thompson's unlawful activity. LHDC's motion for summary judgment is granted as to Lambert's claims: (1) that LHDC engaged in racially charged conduct that violated Title VII and Louisiana law; and (2) for intentional infliction of emotional distress.

IT IS ORDERED that LHDC's motion for summary judgment (Rec. doc. 22) is GRANTED in PART and DENIED in PART in accord with the terms of this order.

New Orleans, Louisiana, this 19th day of October, 2005.

**SALLY SHUSHAN**
**United States Magistrate Judge**